[No. 24964. Department One. September 21, 1934.]

NORTHERN LIFE INSURANCE COMPANY, *Appellant*, v. EVERETTE W. CHRISTIE *et al., Respondents.*[1]

*Richards, Gilbert & Conklin* and *Ian R. MacIver (Jno. F. Bamford,* of counsel), for appellant.

*LaBerge, Cheney & Hutcheson,* for respondents.

MITCHELL, J.—This is an action in equity, brought by the Northern Life Insurance Company, a corpora-

[1]Reported in 36 P. (2d) 73.

tion, to cancel and rescind a policy of accident and health insurance on the ground of alleged fraud in procuring the policy, and to recover back the sum of $5,680 paid out as monthly indemnities upon proof to the satisfaction of the insurance company of the total disability of the insured. Upon appropriate issues framed by the pleadings, the trial resulted in a judgment dismissing the action with prejudice. The insurance company has appealed.

The respondents defended upon the incontestability clause in the policy, and also upon the ground that there was no fraud in procuring the insurance. The decision of the trial court was put upon the first ground, and approving that disposition of the case, we confine our discussion to that question.

The insured became permanently disabled in 1926, shortly after the policy was delivered, made proof of his disability to the satisfaction of the company, and thereafter received seventy monthly payments of eighty dollars each prior to the commencement of the action. The policy, as delivered, covers life insurance, permanent disability and accident and health insurance. The incontestability clause reads as follows:

"INCONTESTABILITY—This policy shall be incontestable after one year from date of policy, except for the non-payment of premium or service in army or navy in time of war."

The contention of the appellant is that the clause relates to the life insurance only, and our attention is called to circumstances and inferences which, it is claimed, tend to justify that argument. On the contrary, the respondents contend that the clause applies as well, or only, to those portions of the contract sought to be cancelled by this action, and insist that the instrument, considered as a whole, under the clear pre-

ponderance and weight of the evidence, supports that contention.

■ The policy is dated March 1, 1926. In form, it consists of eight unnumbered pages. Page four is blank. All the other pages contain printed or written matter pertinent to the contract and to the consideration of the question under discussion. A copy of the application for the insurance is inserted between pages six and seven of the whole instrument. Pages three and four and five and six and a copy of the application for the insurance, evidently formerly were separate or detached from the part comprising pages one and two and seven and eight, but which, when delivered, were securely pasted and fastened together so as to make, in form, one instrument consisting of the whole eight pages, in addition to the application for the insurance.

On the first page of the instrument, in the usual and ordinary large printing and writing, is given the name of the insurer, two thousand dollars as the amount of life insurance promised, and the name of the insured. In large letters at the bottom of the page, in print, are the words: ''Life Income Option Endowment at Age 65, Monthly Premium,'' and immediately following on the same line, in equally large letters, but apparently printed at another time: ''Accident-Health Permanent Disability.''

Page eight of the instrument, which is the back of the policy, has the endorsement:

''The Northern Life Insurance Company, Seattle, Washington, Everette William Christie, No. M-27195, Amount $2,000, Premium $8.34, Payable 15th of each month beginning Mar. 1926. Read your policy and notify the Company immediately in event of any error in the policy or copy of application;''

and at the bottom of the page, as on the first page, the arrangement of the words being somewhat different, the endorsement says: "Accident-Health Permanent Dis. Life Income Option Endowment at Age 65, Monthly Premium."

Page three of the instrument is designated: "Permanent Disability Benefits," in the body of which it speaks of its being a supplemental contract

" . . . *in connection with Northern Life Insurance Company Policy No. M-27195 which, together with the application, copy of which is attached thereto, constitute the entire contract of insurance* and is in consideration of an additional monthly premium of Forty-Four Cents, payable at the same time and under the same conditions as the regular life premium.

*"All subject to the provisions of the above numbered Life Policy to which this is attached,* excepting as to Non-Forfeiture Options which apply to the Life Insurance only." (Italics ours.)

Page five of the instrument is entitled, and speaks of, "Accident Indemnities" and also of "Sickness Indemnities." It speaks of this portion of the instrument as a supplemental contract issued

" . . . *in connection with Northern Life Insurance Company Policy No. M-27195* which, together with the application, copy of which is attached thereto, constitute the *entire contract of insurance* and is in consideration of an additional annual premium of $39.36 Dollars, payable at the same time and in the same manner as the regular life premium, or may be paid $3.28 each month under like conditions.

"All subject to the General and Standard Provisions printed on the reverse hereof, and provided premiums have been duly paid and this policy is in full force, and with the understanding that provisions, if any, in the Life policy as to division of surplus, and non-

forfeiture or continuance of insurance apply to the Life insurance only."

Page six of the instrument, still referring to indemnities, divides the subject into "General Provisions" and "Standard Provisions." Significantly, however, at the top of this page, it is said: "These Provisions Are Applicable *Only* to Accident and Health Insurance." (Italics ours.)

Over one signature, the application for insurance in this case was made for accident or health insurance, eighty dollars monthly indemnity, and for two thousand dollars life insurance.

Page seven of the instrument is entitled: "General Provisions," one of which is the incontestability clause already spoken of. Significantly, it is not immediately or otherwise said that this clause is applicable *only* to the life insurance, nor does it say anything similar to that anywhere in the whole instrument.

Other evidence shows that, at and about the time this policy was issued, the insurance company was urging and featuring the idea of a "3-in-1" policy. The record abounds with evidence of it, which is practically without dispute, as the same was published in papers, magazines and many other ways. A fair sample of it is found upon a blotting pad that was generally distributed as a means of advertising by the company, as follows:

"NORTHERN             Combine Your Insurance
   LIFE                  It Costs Less
INSURANCE CO.
Seattle, U. S. A.      Life      3-in-1      Complete
                     Health                 Coverage
                     Accident               Contract
              One Policy-One Premium
       Absolute Protection to You while living and
                        To YOUR FAMILY 'afterwards'

PAYS YOU     DOUBLE THE FACE OF POLICY If Killed by
            Accident
            FACE OF POLICY for Loss of Hands, Feet
            or Eyes
            MONTHLY INDEMNITY, Sickness or Acci-
            dent

Also Provides You AN INCOME FOR LIFE If Perma-
nently Disabled"

The agent who sold this contract of insurance had a number of interviews with the insured for the purpose of making the sale. He testified as follows:

"Q. Now how was this policy described and referred to by the salesmen, including yourself, as to whether you were selling one policy or whether you were selling three policies. A. I called it a 3-in-1 complete coverage contract and sold it as such. At the time I was selling insurance and at the time I was engaged in selling Mr. Christie I was given by the company photostatic copies of checks, [in the form of which the words Life, Accident, Health were printed] to other policy holders under this 3-in-1 policy. That was what I was trying to sell. I showed these checks to prospective policy holders, including Mr. Christie. On the glass doors of the offices of the company in the Miller Building, first in 632 and then in 611 appeared 'Northern Life, 3-in-1, life, accident, and health.' . . . Q. Is this what is known as a 3-in-1 policy, the one to Everette Christie? A. Yes."

The respondent testified as follows:

"A. He was kind of a persistent life insurance agent. On February 8, 1926, I was just getting off shift on a split shift in the afternoon when he came over there and made the appointment. He made the appointment the day before and I told him I would meet him that afternoon and we went up to his office on the sixth floor of the Miller Building. As we went into the room I remember there was a sign on the door. It said 'Northern Life Insurance Company—3-in-1.' Q. Anything else? A. Accident and health. Q. Anything about life? A. And life. Q. Those three signs on the door? A. Yes."

Nor as a matter of construction can this clause be tied in with the statute so as to make it applicable only or at all to the life insurance portion of the policy. The clause, as written in the contract, provides for incontestability after *one* year from the date of the policy, except for non-payment of premiums or service in the army or navy in time of war. The statute upon the subject relative to life and endowment insurance, Rem. Rev. Stat., § 7230 [P. C. § 3128], subd. 2, provides for incontestability after *two* years from its issuing, except for non-payment of premiums and for violations of the conditions of the policy relating to military or naval service in time of war.

There is no statutory provision upon this subject with respect to accident and sickness and health insurance, nor is there any contention here made that a provision for incontestability after one year, in that kind of insurance, is in any way whatever contrary to public policy. Such a clause can relate to no other kind of insurance in this particular contract than that of accident or health and sickness insurance.

The briefs in the case contain extensive arguments and the citation of a great many authorities on the part of counsel on both sides, but the authorities do not present or consider cases near enough like this one in essential and controlling particulars to be helpful here. The case must be determined upon the facts which it presents, and which include a persuasive "3-in-1" policy of insurance, made still more persuasive by being incontestable after one year with respect to the sickness and health indemnities provided for in the contract.

Judgment affirmed.

BEALS, C. J., MILLARD, BLAKE, and STEINERT, JJ., concur.