[Civ. No. 11298. First Appellate District, Division One.—August 21, 1940.]

HELEN P. BLAIR, Respondent, v. NEW YORK LIFE IN-SURANCE COMPANY (a Corporation), Appellant.

Meserve, Mumper, Hughes & Robertson and E. Avery Crary for Appellant.

Edw. C. Purpus for Respondent.

WARD, J.—This is an action to recover disability benefits accruing under a policy of insurance issued by defendant company on the life of plaintiff, with particular reference to what law governs the interpretation of the two-year incontestability clause in the policy.

Pursuant to a written application made at Tacoma, Washington, on or about September 23, 1927, and in consideration of the payment of the first year's premium, the New York Life Insurance Company issued a policy of life insurance to Helen P. Blair in the amount of $10,000. This amount was subsequently, by amendment, reduced to $8,000 and approximately thirty days later the company executed and issued a policy in that amount in New York, and delivered it to plaintiff in the state of Washington. In addition to life benefits, the policy contained a provision for the payment of disability benefits of $10 for each $1,000 of the face of the policy for each completed month from the commencement of and during the period of continuous total disability. A waiver of the payment of premiums during such disability was also contained in the policy, and provision for restoration of the policy in case of default after such disability.

Plaintiff became disabled in 1929 and the company paid the disability benefits provided under the policy from February 15, 1929, to August 15, 1930. The record does not show the place of such payments but we may assume they were received by plaintiff in the State of Washington, at least until 1930 when she moved to California, where she has since resided. In October, 1932, plaintiff again became totally disabled and from such time until August, 1936, the company paid her the designated disability income payments. In the meantime, in December, 1932, the company made a loan to plaintiff upon the security of the value of the policy. In September, 1936, the company notified the insured that it elected to rescind the provisions for disability and double indemnity benefits because it had recently learned that Miss Blair, in her application for the policy, had failed to disclose material facts as to her physical condition. The company further notified her that it recalled its waiver of certain annual premiums and demanded the payment thereof, as well as the return to the company of amounts paid by it as monthly disability income benefits.

In December, 1936, plaintiff filed this action in California to compel defendant company to pay all disability income benefits due since August 15th of that year and all payments that may thereafter become due until such time as her disability ceases. Defendant answered, and cross-complained

upon allegations of the falsity of certain statements in the original application for insurance, seeking a rescission of the total and permanent disability provisions of the policy and the return of benefits paid thereunder. Judgment was entered for plaintiff and against defendant, whereupon defendant appealed.

Appellant insurance company contends that the contract of insurance herein was to be performed in New York, and that its provisions are to be interpreted in accordance with the laws of that state. A long list of authorities are cited. These include two unreported cases from the appellate department of the Superior Court of Los Angeles (*Furst* v. *New York Life Ins. Co.*, Civ. A–3895; *Smith* v. *New York Life Ins. Co.*, Civ. A–3788) : *Monahan* v. *New York Life Ins. Co.*, (two cases) 26 Fed. Supp. 859; *Head* v. *New York Life Ins. Co.*, 43 Fed. (2d) 517; *Ostroff* v. *New York Life Ins. Co.*, 23 Fed. Supp. 724; *Ostroff* v. *New York Life Ins. Co.*, 104 Fed. (2d) 986, and dissenting opinion by Wilbur, J.; *New York Life Ins. Co.* v. *Waterman*, 104 Fed. (2d) 990, and concurring opinion by Wilbur, J.; *Harrigan* v. *Home Life Ins. Co.*, 128 Cal. 531 [58 Pac. 180, 61 Pac. 99]; *Burr* v. *Western States Life Ins. Co.*, 211 Cal. 568 [296 Pac. 273]; *Grauer* v. *Equitable Life Assur. Soc.*, 167 Misc. 30 [3 N. Y. Supp. (2d) 564]; *Equitable Life Assur. Soc.* v. *Kushman*, 276 N. Y. 178 [11 N. E. (2d) 719]; *Steinberg* v. *New York Life Ins. Co.*, 263 N. Y. 45 [188 N. E. 152, 90 A. L. R. 642]; *Guardian Life Ins. Co. of America* v. *Katz*, 243 App. Div. 11 [275 N. Y. Supp. 743].

The further contention is made that if the New York law is not controlling, then the law of the State of Washington, wherein the contract was entered into, governs. In support of this theory, appellant cites *Fitzhugh* v. *University Realty Co.*, 46 Cal. App. 198 [188 Pac. 1023]; *Bank of Yolo* v. *Sperry Flour Co.*, 141 Cal. 314 [74 Pac. 835, 65 L. R. A. 90]; *Millis* v. *Continental Life Ins. Co.*, 162 Wash. 555 [298 Pac. 739], and other cases. It is claimed that both states permit an attack for fraud.

There is no specific provision that the policy is to be performed in New York, or that the laws of that state shall govern in a controversy involving the legal interpretation to be placed upon any part thereof. The policy provides that benefits for total disability will be paid ''upon receipt at the

Company's Home Office" of due proof thereof. In connection with paragraph "Payment of Premiums", the policy reads: "All premiums are payable on or before their due date at the Home Office of the Company or to an authorized agent of the Company, but only in exchange for the Company's official premium receipt signed by the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company, and countersigned by the person receiving the premium. . . . "

█ While the laws of one state may determine the interpretation of one clause of a policy, and the laws of another state govern that of another clause, it must be conceded that the laws of two states upon a specified clause presented for interpretation, if in anywise inconsistent, may not jointly control. The parties hereto did not mutually agree that the laws of New York or Washington should prevail relative to the contract, as appears in *Morrison* v. *Mutual Life Ins. Co. of N. Y.*, 15 Cal. (2d) 579 [103 Pac. (2d) 963]. Civil Code, section 1646, provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made", which means that the place where the contract is made is of importance when the contract does not indicate a specific place of performance.

In the instant case, the primary question to decide is whether or not plaintiff was entitled to the monthly disability benefits. If not, then the company might have been entitled to a return of the amounts paid by it, a cancellation of the total disability provisions of the policy and the return to plaintiff of premiums paid in that connection.

The insured had the privilege of paying the premiums to an authorized local agent, although the home office of the company was their final destination. The evidence shows that the premiums were mailed to New York, but the caption on the back of the policy indicates that it was issued through the "Tacoma Branch". Up to this point, as we construe the policy, it was originally intended to be performed partly in New York and partly in Washington. The first premium was paid in Washington one month prior to the execution by the company of the policy in New York; the policy was thereafter delivered to plaintiff in Washing-

ton. The delivery usually completes a contract. (*Mutual Life Ins. Co.* v. *Cohen,* 179 U. S. 262 [21 Sup. Ct. 106, 45 L. Ed. 181].) ██ The law of the place of performance of an insurance contract controls as to its legal construction and effect, but that of the place where made governs on all questions of execution and validity (*Flittner* v. *Equitable Life Assur. Soc.,* 30 Cal. App. 209 [157 Pac. 630]), unless the terms of the contract provide otherwise or the circumstances indicate a different intention. ██ In this case, the circumstances do not indicate that in the matter of the interpretation of the contract, the parties intended to be restricted to the laws of the State of Washington, where the contract was consummated by the delivery of the policy.

In the body of the policy, there is a provision that "This policy is free of conditions as to residence . . . except as provided herein. . . ." We fail to find an excepted condition. Under the terms of the policy, the premiums could be paid at the home office or to an authorized agent in exchange for the company's official receipt signed by a designated officer and countersigned by the agent receiving the premium. Under this provision, the contract was to be performed partly in New York and partly in any other place where the premiums were paid or other necessary business could be transacted.

██ In recognizing California as the place for the payment of benefits by delivery thereof in this state, defendant waived any right to insist that the Washington law governed. The waiver is not one of jurisdiction, but of the right to apply the Washington law to an action tried in California. The intention of the parties, as gathered from attending circumstances, is controlling in determining the place of trial and the governing laws. ██ Liability for the breach of a contract partly performed in one state, and made and partly performed in another, is fixed by the laws of the state wherein the breach occurred. (17 C. J. S., p. 343.) The breach in this case was defendant's refusal to pay further disability income benefits to plaintiff in California.

In the present case we are not dealing with an insured who traveled out of the State of Washington and into another because the law of the second state was more favorable to her legal contentions—a situation that should not be approved; here the plaintiff moved to California in 1930. The

premiums were thereafter presumably paid from California. The disability income benefits commenced and were paid approximately two years later, and they continued for four years in California. The good faith of the plaintiff in this case may not be attacked upon the theory of change of residence. The safest rule to follow is that which upholds the contract. (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Smith,* 38 Okl. 157 [132 Pac. 494, Ann. Cas. 1915C, 620].)

In brief, we hold that performance of the terms of the insurance contract was partly in New York and partly in Washington, and that under such circumstances the law of the place where the contract was made generally prevails; that defendant waived the law of Washington as controlling by its continuous acceptance of premiums from California, its payment of disability benefits here; also the making of a loan to Miss Blair upon the security of the value of the policy, without the surrender thereof, during the period that she lived in California, and, as appears from the record, after her second period of disability had commenced.

As relates to the within case, one question is involved, namely, what is the law of this state relative to the ''Incontestability'' clause in the policy, which reads as follows: ''This policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits.''

Appellant company contends that fraud on the part of Miss Blair in connection with statements as to her physical condition, as they appear on her application for insurance, provides the exception as to the policy's incontestability.

In *Ostroff* v. *New York Life Ins. Co.,* 104 Fed. (2d) 986, an identical ''incontestable'' clause, with a like direction as to payment of premiums, was in dispute. (See, also, *New York Life Ins. Co.* v. *Waterman,* 104 Fed. (2d) 990.) In the Ostroff case, as in this, the repeated payment of premiums, except as waived, when plaintiff was totally disabled, could have been made under the terms of the policy outside of the State of New York. In that case, at page 989, the court said: ''Without deciding what law would control the interpretation of the incontestability clause if the contract were entirely to be performed in New York, we hold that since the policy is to be performed both in California and New

York, and the case concerns the making and not the performance of the contract, the law of California, the place of making of the contract, controls. Cf. 12 C. J. 451." In the same case, at page 989, the court comments upon *Burr* v. *Western States Life Ins. Co., supra,* as follows: " . . . the sole question was the place of performance of payment of the benefits under the policy. The policy was construed as requiring the payment of later benefits claimed at San Francisco because the first payment was required by the policy to be paid there. It is obvious that if the policy had provided for the payment of later benefits at the residence of the insured, the place of performance would have changed as his residence changed."

California has answered the question in *Coodley* v. *New York Life Ins. Co.,* 9 Cal. (2d) 269 [70 Pac. (2d) 602], involving an identical incontestability clause in another policy issued by the same company. It is conceded by the company that, after a stipulated period, evidence based on false statements, even though fraudulently made, was barred as a defense, unless by the terms of the policy fraud was expressly or impliedly excepted from the effect of the incontestability provision. (*Dibble* v. *Reliance Life Ins. Co.,* 170 Cal. 199 [149 Pac. 171, Ann. Cas. 1917E, 34]; *Mutual Life Ins. Co.* v. *Margolis,* 11 Cal. App. (2d) 382 [53 Pac. (2d) 1017].)

Had defendant desired to take advantage of the exception provided in the incontestability clause as relates to the facts in this case, it could and should have definitely included such provision in the "Total and Permanent Disability" section of the policy, and had it desired that any controversy relative to an interpretation of this clause should be controlled by the laws of the place of execution of the contract, such provision could easily have been inserted in the policy.

In the trial of this action, in support of its contention that the terms of the contract should be construed in accordance with the laws of the State of New York, or of the State of Washington, appellant offered to prove that certain statements in the application signed by plaintiff were fraudulent and untrue; that plaintiff knew them to be untrue, and that the company was induced by the claimed fraudulent statements to issue the policy. An objection to the offer was sustained. Under the facts of this case, and the holding in *Coodley* v. *New York Life Ins. Co., supra,* the ruling was

correct. (*Stroehmann* v. *Mutual Life Ins. Co. of N. Y.*, 300 U. S. 435 [57 Sup. Ct. 607, 81 L. Ed. 732] ; *Mutual Life Ins. Co.* v. *Hurni Packing Co.*, 263 U. S. 167 [44 Sup. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102] ; Encyclopedia of Law of Insurance (Couch), sec. 2155, p. 6961; *Ness* v. *Mutual Life Ins. Co. of New York*, 70 Fed. (2d) 59; *New York Life Ins. Co.* v. *Kaufman*, 78 Fed. (2d) 398; *Royal Insurance Co.* v. *Martin*, 192 U. S. 149 [24 Sup. Ct. 247, 48 L. Ed. 385]; Cooley's Brief on Insurance, vol. 5, p. 4501 et seq.; Joyce on Insurance, 2d ed., vol. 5, pp. 6112, 6113.)

Certain findings are attacked which involve the questions just discussed. What has been said heretofore is sufficient answer thereto.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 20, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 17, 1940.